May it please the Court, my name is Cindy Yu of Kornberg and Abramowitz, attorneys for Petitioner Matisse-Levick. The issue presented in this case is whether the Court has jurisdiction to review an order of removal entered by the Board of Immigration Appeals in light of the REAL ID Act of 2005 and Molina Camacho. Here, in this case, the petitioner was granted withholding of removal by the immigration judge. The government subsequently appealed. The BIA then reversed and ordered the petitioner removed because he was not eligible for withholding based on a drug trafficking crime under YL. Here, Petitioner respectfully asserts under Molina Camacho that the order of removal entered by the BIA is non-final because the BIA acted ultra-virus in issuing the order of removal instead of remanding it to the immigration judge to issue the order. As this Court is already aware, according to AUSC 1252A1, this Court only has jurisdiction to review a final order of removal. Hence, this Court has no jurisdiction to review the petition for review. The question then becomes whether the district court has habeas corpus jurisdiction to review this case under the REAL ID Act. AUSC Section 1252A5, as amended by the REAL ID Act, eliminates habeas corpus jurisdiction over final orders of removal by stating that the petition for review is the exclusive and sole authority for this Court to review final orders of removal. Because no final order of removal has been entered in this Court, habeas corpus jurisdiction still exists with the district court. Based on what the Court has done in Molina Camacho, Petitioner would respectfully request this Court to convert the petition of review to a writ for habeas corpus and transfer this case to the district court for review. Under Cruz-Aguilera, transfer is appropriate because this Court lacks jurisdiction over the petition for review in light of the REAL ID Act of 2005. The district court would have had jurisdiction over the petition for review at the time the case was filed in September 11, 2003, because the REAL ID Act, as indicated by the year of the Act, was not enacted. The interest of justice would also be served by transferring this case to district court, because otherwise the petitioner would not have a judicial forum for to seek review. The Supreme Court in Calacano, Martinez, and St. Cyr makes clear that Congress must speak with clarity to strip district courts of habeas corpus jurisdiction. Specifically, Congress must articulate specific and ambiguous statutory directive stating that it is going to strip the district court of habeas corpus jurisdiction. Because other provisions of the REAL ID Act refer to final order of removal in discussing in removing habeas corpus jurisdiction from the district court, such as Section 1252AC as amended by the REAL ID Act, this Court can assume that habeas corpus jurisdiction still exists for non-final orders of removal. Again, as I stated earlier, because the BIA's decision was a non-final order of removal, the district court would still have habeas corpus jurisdiction over this case. But in the alternative, assuming arguendo that the court views the order of removal by the BIA as a final decision in light of the REAL ID Act of 2005, this Court would have jurisdiction over the petition for review filed by the petitioner. I have nothing further. Let me ask which, if it were to be transferred to the district court, which would be the appropriate district? It would be the Central District of California. Okay. One more question, I guess, briefly on this. The immigration judge did grant your client relief. The BIA decided otherwise. Never mind. I withdraw the question. I'll follow up along the same line because it's still not clear to me. The immigration judge never ordered deportation. The BIA did. The BIA's Act apparently is ultra-virus or without jurisdiction. So how can you – what in the Act would allow this to be transferred as a habeas action to the district court when it still lacks a legitimate order of deportation from the immigration judge? I believe in case law decided by the Ninth Circuit, there's a federal transfer statute. I believe it's 13. I can't remember the statute offhand. That allows the Ninth Circuit to transfer cases when they lack jurisdiction to the district court. But based on the real ID Act, because the statutory language makes reference to final orders of removal, we would respectfully assert that because no final order of removal was entered in this case, that habeas jurisdiction would still reside. But otherwise, the Petitioner would be left with no judicial form to file any claims because the real ID Act effectively removes all habeas corpus jurisdiction from the district court and streams the cases to the Ninth Circuit. So in cases like the Petitioner where the BIA ordered the Petitioner removed, and that is deemed not a final order, individuals in cases like those would be left with no judicial form to seek review. And this Court has indicated on other – on numerous occasions that that would leave serious constitutional – would raise serious constitutional concerns. Do you have that provision in your notes? I'm sorry? What provision? You talked about a provision that would authorize this Court to transfer the matter to the district court for habeas review or something like that. You said you couldn't remember the – I believe it's a Federal transfer statute. It was referenced likely in Cruz v. – in Cruz-Aguilera v. INS 245F3-1070, which states – which the Ninth Circuit has interpreted that when there is a jurisdictional defect that exists in the case, it may transfer the case to district court. Okay. Thank you. Thank you. May it please the Court. My name is Robin Bly. I represent the Attorney General in this matter. There was an issue – there was an order of removal issued in this case. It was issued by the district director, which is the only person who could have done that in this case. Under 8 CFR 217.4b1, it indicates that the district director is the only person who can render a removal order in a visa – a person – for a person who has entered under the Visa Waiver Pilot Program. The fact that the board – What was what? I missed the last few words. I'm sorry. You said for a person who is in, and I missed a couple words, and the last word was program. Oh, who has entered the United States under the Visa Waiver Pilot Program. Oh, we – the Visa Waiver Pilot Program. Okay. And I believe this Court has indicated that the district director is the only person that can do that in Handa v. Clark as well, which is at 401F3-1129. The fact that the board, in its decision, said that the alien was denied withholding of removal for a particular serious crime and then later issued what could be considered a removal order, the court – the government would contend that that's harmless error because they were not, in the first instance, unlike in Molina Camacho where the board had entered the removal order in the first instance. In this instance, the board was without jurisdiction to do that. The fact that they did it was a harmless error because the district director had already determined that he was removable and that the only thing that the immigration judge and board could decide under the regulations was whether this alien was – could apply for asylum with – or eligible for asylum withholding of removal or protection under the convention against torture. So we would – we would say that Molina Camacho does not apply, that under the Real ID Act, that this – I missed those first three words again. I'm sorry. When you started that sentence. We would say that under – the government would contend that under the Molina Camacho decision, this case is distinguishable. In addition, we would say that the Real ID Act does not apply in this case. The – as I indicated before, the petition was ordered removed by the district director. The only question the IJ and the BIA had to determine was whether he, in this instance, was eligible for withholding of removal. The immigration judge originally granted him that relief, and then when it was appealed to the board, the board denied it, finding his crimes for drug trafficking particularly serious. Under this Court's decision in Matsuk v. INS, this Court has no jurisdiction to consider that. To the extent that they try and raise some claim that the board's decision in matter Y.L., A.G., R.S.R., or R – yeah, R.S.R., equates to regulation that has – they've provided no authority for that at all. The courts have continuously held that statutes operate prospectively and that judicial decisions operate retrospectively, and we would – we would state that under the board's intervening decision in Y.L. that this Court should find that it lacks jurisdiction and determine over the petitioner's – over the board's determination that this was a particularly serious crime. The courts have – this Court and the board have continually held that drug trafficking crimes are particularly serious. And under that case in Y.L., the Attorney General considered that exact issue and determined that this alien – not this alien, but aliens who have committed drug crimes are considered presumptively have – are considered to have committed particularly serious crimes. There are no questions? I'm going to root you back to the beginning, because to be – to be candid, the explanation that you offered up to distinguish this case from Molina Camacho, I finally began to get a hold of after you'd mostly gotten done saying what you said. So I'm going to have to re-root you and ask you to go through that step by step and see if I've got this correct. Well, I should let you say it. I shouldn't try to repeat it back. So could you explain again, slowly, how it is Molina Camacho is distinguished? Okay. This alien applied under the Visa Waiver Pilot Program, which is under 8 U.S.C. 217 in the INA. And as such, he was found removable by the district director. So that's what the district director decided. The case was referred to the immigration judge and the board – or the immigration judge after Petitioner claimed that he had a fear of returning to Germany. And the immigration judge rendered a decision. Petitioner appealed it to the board. The board rendered a decision. In the board's decision, they found that the alien had been convicted of a particularly serious crime and, therefore, withholding was not available to him. In addition, the board erroneously, which we submit is harmless error, stated that Petitioner entered a removal order. But this is distinguishable from Molina Camacho in that in Molina Camacho, it was determined that the board in the first instance had rendered a removal order. That is not the case here because the district director was the only person who could do that under the regulations. The district director did – I'll stop you. Under the regulation – I take it that's a regulation issued under the Visa Waiver Program. Yes. At 8 CFR 217.4 B1. 217 point – A little slower. 8 CFR 217.4 B1. B1. Okay. And that – is the district director's order of removal in the record? Yes, it is, Your Honor. It is – I believe it's the last page is – I think it's 392. And it also appears somewhere else in the record. I don't know exactly where, but 392. And I take it then in Molina, there had been no such order of removal issued previously by the district director or anyone else with authority. And so the only order of removal that could have been effective was the one issued by the BIA, which our court concluded was beyond the BIA's power. Correct. But in this case, the argument is that the BIA action, if even of ultraverse, was redundant or unnecessary because there was already an effective order of removal that was put on hold by virtue of the withholding granted by the IJ, but when the BIA reversed the IJ's withholding, it had the effect of reinstating the order of removal. Yes, Your Honor. Okay. So what would the remedy be then for the petitioner? Your Honor, he can appeal it. I mean, he's appealed his case here, and that's it. So you're saying we do have jurisdiction. There is a final order of removal. Well, you don't have jurisdiction because the issue is whether there was a particularly serious crime, which the Board had said that there was. So under this Court's decision in Matsook, this Court doesn't have jurisdiction. He has no other – He has jurisdiction over the petition, but not over the issue raised by the petition. That's correct. So you're suggesting that the petition should be dismissed. Correct. If there are no further questions. And why don't we have jurisdiction over the issue raised by the petition? Well, Your Honor, if – I'm understanding your question. Why? You said we don't have jurisdiction. Because the Board determined that this – he had been convicted of a particularly serious crime, and so he was ineligible for withholding of removal. And that's a discretionary decision of the Attorney General that even under the Real ID Act would not – Even the what? Even under – Let me tell you something. You know, if you're one of my kids, I'd tell you, you know, you're really smart. The ideas are running through your head, but you're sort of talking too fast. I'm sorry, Your Honor. Because you know this. You've got the passion, you know, behind your argument. But I'm – you know, some of this – we do 35, 40 cases a week, so I've got to think about each one. So what were those words you used? Under the Real – even under the Real ID Act, we would contend that the Attorney General's or reviewed by this Court. That's our massive decision. Well, it doesn't address the Real ID, but, yes, it was issued before the Real ID Act. Yes. If there are no further questions. Okay. Thank you very much. Thank you. With respect to Government's counsel argument that the Real ID Act does not apply in this case, I would like to direct the Court to provision B under the Real ID Act, which says that it shall take – Which provision? It's Section B. It says the – Section B of 106, the effective date, which states very clearly that the amendments made by the subsection that was issued before, which makes clear that the Real ID Act does apply retroactive to provisions before, on, or after the date of enactment of this statute. So, Petitioner would argue that the Government's counsel argument that the Real ID Act does not apply in this case is erroneous, based on the statutory language. But does it have an effect? I mean, as I understand it, the Real ID Act says that the – you have a final order of removal. The only place to go is here, as you, in fact, have done with the petition. And the Government has argued that there is here a final order of removal, because the district director's order is effective. And so you're appropriately here, and I guess that would let us reach the issues that were actually briefed before the Molina decision and the Real ID Act intervened to give us the preliminary issues. But is there a reason why, assuming for the moment the Government is correct that there is a final order of removal, is there a reason why you can't be here and proceed with your petition in this Court? It seems to me the Real ID Act doesn't change that part. No, Your Honor. We could – we – assuming we would submit that, the Court would have jurisdiction, even if the Real ID Act doesn't apply. But it's our submission that the Real ID Act does apply, and because there is no final order of removal, that we would request the Court to convert this petition for review to writ for habeas corpus. Petitioner would also argue that Molina Camacho – the procedural history of this case are virtually identical to Molina Camacho, with the exception of the order of removal issued by the District Director. But now that there is an order of removal issued by the Board of Immigration Appeals, that would be the basis for Immigration Customs Service to have a warrant to arrest Petitioner. And thirdly, we would argue that it was not harmless error for the Board to – to issue a deportation order by acting ultra – by acting ultra-virus. It did – it exceeded its authority, and based on the Court's rationale, it is an appellate body with no – with no jurisdiction to effectively issue orders of removal. It only has the authority to review the record before it. If we accept that there's a deportation order here that had been issued validly, what is your legal challenge to the legitimacy of that order? That we would – we would, as stated in the brief, we would – we would submit that the application of Y – of YS would amount to retroactive regulation, because it does not specify in the regulations that a drug trafficking crime is a particularly serious crime. In fact, the Board of Immigration Appeals has added this requirement to the statute itself. So we would submit that – that the Petitioner was once eligible for withholding of removal prior to – prior to Y – YL, but after – after YL, now the – it renders the client ineligible, and it has an impermissive retroactive effect. Based on a public policy rationale, that would be analogous to clients who have been granted adjustment of status, and a new – a new – a new case law issued by the Board of Immigration Appeals renders some crime that was deemed immiscible now admissible. Now can immigration – the immigration service go back in time and render those clients who have been granted adjustment of status where their crime was deemed not admissible now deem them inadmissible to the United States. So that would be our rationale. Thank you. Very good. Appreciate the argument on both sides.
judges: Pregerson, Clifton, Hicks